**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **VE OPENING LLC,** | |
| Plaintiff, | C.A. No. 7:25-cv-361 |
| v. | **JURY TRIAL DEMANDED** |
| **MOVEWORKS, INC.,** | **PATENT CASE** |
| Defendant. | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VE Opening LLC files this Original Complaint for Patent Infringement against Moveworks, Inc., and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff VE Opening LLC ("VE" or "Plaintiff") is a Texas limited liability company with its address at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2.      On information and belief, Defendant Moveworks, Inc. ("Moveworks" or "Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 515 Congress Ave., Suite 1212, Austin, TX 78701.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein at its place of business at 515 Congress Ave., Suite 1212, Austin, TX 78701.

5.     Without limitation, on information and belief, within Texas and this District, Defendant has used the patented invention thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and this District, including at its place of business at 515 Congress Ave., Suite 1212, Austin, TX 78701.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case including at its place of business at 515 Congress Ave., Suite 1212, Austin, TX 78701.

7.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,916,079)

8.     Plaintiff incorporates the above paragraphs herein by reference.

9.     On March 13, 2018, United States Patent No. 9,916,079 ("the '079 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '079 Patent is titled "Method and System for Enabling the Sharing of Information Between Applications on a

Computing Device." A true and correct copy of the '079 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VE is the assignee of all right, title, and interest in the '079 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '079 Patent.  Accordingly, VE possesses the exclusive right and standing to prosecute the present action for infringement of the '079 Patent by Defendant.

11.     The invention in the '079 Patent relates to the field of methods for enabling the sharing of information between applications on a computing device.  (Ex. A at col. 1:15-17).

12.     The '079 Patent describes the technological problem that existed in the prior art. People relied on applications installed on computing devices, which are typically intended to address a particular function or a limited number of functions.  (*Id.* at 1:21-25).  For example, a calendar application may be used to schedule events and invite participants, whereas an email application can enable participants to message each other about the event.  (*Id.* at 1:25-28).  While each application on its own may be useful for a particular purpose, performance of a task may require the use of multiple applications.  (*Id.* at 1:29-31).  The multiple applications typically operate independently from each other; however, cooperation between the applications, such as through information sharing, would provide a better solution.  (*Id.* at 1:32-35).

13.     With the number of applications on computing devices continuing to grow, users may want or need to use several applications together to perform tasks rather than requiring separate use of each application.  (*Id.* at 1:36-39).  However, setting up the sharing of information between multiple applications may be difficult and confusion for a typical user and may be tedious even for an advanced user, particularly when the number of applications required to complete a task is large.  (*Id.* at 1:39-43).  Therefore, there is a need for methods that enable sharing of

information between multiple applications to allow users to perform related tasks in a more efficient and user-friendly manner. (*Id.* at 1:43-46). Recognizing the need, the inventor created a new technological method for sharing information between applications on a computing device related to searching across multiple applications and linking information between such applications. (*Id.* at 1:50-64). The claimed invention enables typical or basic users to take advantage of information sharing across multiple applications even though the users may not otherwise attempt such a challenge. (*Id.* at 6:35-40). The invention also results in time savings and efficiency in setting up information-sharing that may be realized even by sophisticated users of the computing device. (*Id.* at 5:40-42).

14.    **Direct Infringement.**  Upon information and belief, Defendant directly infringes claim 1 of the '079 patent in Texas, in this District and elsewhere in the United States, by performing actions comprising using or performing the claimed method of enabling the sharing of information between a first application and a second application on a computing device by using and offering for sale Enterprise Search ("Accused Instrumentality").

15.    Moveworks, through its use of Moveworks' Enterprise Search product, practices a method of enabling the sharing of information between a first application and a second application on a computing device. Enterprise Search enables the sharing of information between Moveworks, which is an AI productivity platform, and integrated applications such as Workday, Servicenow, Slack, Google Calendar, Snowflake, and more.

 Moveworks

Products    Solutions    AI Agent Marketplace    Developers    Resources    Company    

# Moveworks Introduces Enterprise Search with Agentic AI and Enhances RAG with Reasoning

Moveworks Enterprise Search enables trustworthy and accurate answers to solve the enduring information retrieval problem.

October 29, 2024 06:00 AM

**Mountain View, CA – October 29, 2024 –** Moveworks, the leading generative AI Copilot for employee support, today announced the launch of Moveworks Enterprise Search, a generative AI-powered enterprise search solution designed to make it easier for employees to quickly find the information they need and get back to what matters most.

A recent survey of knowledge workers found that 49% of employees spend up to two hours every day trying to track down the information needed to do their jobs across hundreds of different applications. As a result, employees often struggle with fragmented information, leading to wasted hours and reduced productivity.

([https://www.moveworks.com/us/en/company/news/press-releases/moveworks-introduces-enterprise-search-with-agentic-ai-and-Enhances-rag-with-reasoning](https://www.moveworks.com/us/en/company/news/press-releases/moveworks-introduces-enterprise-search-with-agentic-ai-and-Enhances-rag-with-reasoning)).

> enterprise search: a method of enabling the sharing of information between a first application and a second application

The arrival of Retrieval Augmented Generation (RAG), transformed enterprise search. But RAG systems have two critical shortcomings: accuracy and hallucinations. RAG systems are unable to understand and prioritize the trustworthiness of sources, and they can distort information. Beyond the primary issues with quality, organizations must also overcome challenges related to scale, permissions, integrations, business context, and visibility. Clearly, enterprise search needs to evolve beyond basic, homegrown RAG solutions.

Moveworks solves this with a new approach: agentic AI. Rather than treating enterprise search as a shallow, simplistic retrieval process, Moveworks Enterprise Search is dynamic, goal-oriented, and intelligent thanks to an agentic Reasoning Engine that's able to understand employee goals, develop nuanced plans, and search across various business systems to return high-quality results.

Other key features of **Moveworks Enterprise Search** include:

- **Citations:** Link to citations to help fact-check and verify results for accuracy to minimize hallucinations that distort information.

- **Deep integrations:** Connect Moveworks Enterprise Search to the most useful information repositories and add custom use cases for information retrieval from any system of record.

- **Granular permissions & access controls:** Ensure the right employees have access to the right information (and nothing more).

- **Data volume & variety:** Scale to support the large data volumes and variety of business objects that are commonplace in the enterprise.

- **Robust analytics:** Ensure stakeholders stay in the loop on adoption as well as usage, and make data-driven decisions on how to continuously improve the overall state of service for employees.

"By leveraging agentic AI, we're solving many of the key challenges that basic RAG systems couldn't overcome," said Varun Singh, President and Co-founder of Moveworks. "Moveworks Enterprise Search aims to provide employees with accurate, up-to-date, and personalized answers, ensuring that enterprise search is no longer a pain point but a productivity driver."

([https://www.moveworks.com/us/en/company/news/press-releases/moveworks-introduces-enterprise-search-with-agentic-ai-and-Enhances-rag-with-reasoning](https://www.moveworks.com/us/en/company/news/press-releases/moveworks-introduces-enterprise-search-with-agentic-ai-and-Enhances-rag-with-reasoning)).

> enterprise search: goal is the same as the '079 patent at 6:35-42 ". . . time savings and efficiency"

> **Enterprise search is a powerful software solution that helps employees quickly find the information they need to be productive and drive better business outcomes.** Instead of sifting through individual databases, an enterprise search tool crawls across all your information silos — documents, emails, code repositories, project management tools — and delivers relevant results in a unified interface. So that crucial report you created is finally at your fingertips, even if you can't recall the exact title.

But enterprise search isn't just about locating documents — it's about accessing the collective knowledge and insights within an organization, seamlessly. Employees are searching for answers, solutions, and insights to propel their work forward. In a landscape where time is of the essence and efficiency is key, enterprise search emerges as a crucial tool, bridging the gap between scattered data and actionable knowledge.

([https://www.moveworks.com/us/en/resources/blog/what-is-enterprise-search](https://www.moveworks.com/us/en/resources/blog/what-is-enterprise-search)).  Enterprise search is able to search within the first application itself, which is structured data and unstructured data. Both the structured and unstructured data comprise information within the first application. Examples of both sets of information within the first application are notated below:

## Structured data

First, there's the issue of structured data. This is the kind of neatly organized information you might find in a database or spreadsheet. Think customer records, financial transactions, inventory logs. While this data is often easier to search and analyze, it can be siloed across different systems that don't always play nicely together. Connecting these structured sources and presenting the information in a unified, searchable way is one piece of the puzzle.

**Information within first application**

**Examples of structured data sources include:**

• Relational databases (e.g., customer records, financial transactions)
• Enterprise applications (e.g., CRM, ERP, HRMS systems)
• Spreadsheets and CSV files
• XML and JSON data stores

## Unstructured data

But what about all the unstructured data floating around your organization? We're talking emails, documents, presentations, images, videos. This is where things get tricky. Unstructured content makes up a huge portion of enterprise data, but it's inherently harder to search and extract insights from. Traditional keyword search falls short here, often missing the mark on understanding the true meaning and context buried within.

**Examples of unstructured data sources include:**

• Documents (e.g., Word, PDF, PowerPoint files)
• Images, videos, and audio files
• Support ticket notes
• Intranet sites

(https://www.moveworks.com/us/en/resources/blog/what-is-enterprise-search).



(https://www.moveworks.com/?utm_source=google&utm_medium=cpc&utm_campaign=NA_B rand_Moveworks&utm_content=Demo-Moveworks-AI-Assistant-

Homepage&adgroup=Brand_Moveworks&utm_term=move%20works&network=g&device=c&placement=&gad_source=1&gad_campaignid=16630814783&gbraid=0AAAAACpT-ykemjMrbH2hme7yUek9txQDn&gclid=CjwKCAjwtfvEBhAmEiwA-DsKjo3vjB9Ak0iX04CeZyVj9JYMyYHLOssKrK6NPJjFVy4DVK3NKGe3wxoCegQQAvD_BwE).

16.    Enterprise search searches across the first application discussed above as well as integrated business applications (second application).  Examples of the second applications are shown below:





(https://www.moveworks.com/).  Enterprise applications that are searched from enterprise search comprise one or more second applications.



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search)).



([https://www.moveworks.com/us/en/platform/integrations](https://www.moveworks.com/us/en/platform/integrations)).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search)).

17.    Moveworks, through its use of Moveworks' Enterprise Search product, performs the step of, from the first application, initiating a global search covering the first application and the second application.  For example, a user may initiate Enterprise Search by opening the Moveworks Enterprise Search window, and clicking into the search box in the center of the screen. Moveworks Enterprise Search explicitly can search within Moveworks' own internal data sources (first application) (*e.g.*, internal knowledge bases, product documentation, code repositories, help articles) and surfaces that content, as well as content from integrated applications (second application(s)).  An example of how information is pulled into Moveworks (as part of the first application) so that it may be searched, are files:

Q: How are my files stored?

A: Moveworks uses AWS S3 buckets as the main customer data store. Dedicated buckets are allocated for each customer and encrypted with unique encryption keys per-customer generated via AWS KMS service. All data is encrypted at rest using AES 256.
File Search follows all of the same security protocols as our Answers skill today.

**Q: How many files can be ingested in File Search?**

**A:** Please see the page for the latest.

**Q: Are there any limits on file length?**

**A:** Starting at 100 pages per file, please reach out to your Customer Success team to learn more about serving larger files with File Search. For snippetization of files, we have certain limits:

- PDF , DOC: 25MB
- PPT: 100MB
- TXT: 3 MB

If size goes beyond this Moveworks will simply create one file title snippet (versus many snippets from the file itself)

# File Search FAQ

## Overview

File Search superpowers the **Answers** capability in the Moveworks bot in that beyond Knowledge Base Articles, you can now ingest, index, and serve content from within **.pdf**, **.txt**, **.docx and .pptx files** in response to your employees' search queries.

This guide answers questions about the capabilities of File Search today.

(https://help.moveworks.com/docs/file-search-faq).

18.     The citation below explains background technology behind how Moveworks can actually search across both the first and second applications through the first application. Information from within both first/second applications is ingested and indexed.  This information is encapsulated in an Enterprise Graph, which serves as a baseline information used to generate candidate elements further in the claim.

# Moveworks Search 101

## Data Ingestion & Indexing

Moveworks regularly ingests several kinds of items from customers' systems across the Answers (KB articles and FAQs), Forms, Identity and Access (user information, distribution lists) and Lookups (people and places) Skills. The frequency of these updates varies from several times a day to a few times a week, and is available here.

Specifically, knowledge is processed to create "snippets", which are smaller sub-articles created for the purpose of more precise matching of relevant knowledge with user queries. This enables your bot to serve up the most relevant part of an article, if the user's query is best answered with a focused snippet.

In addition, Moveworks uses an Enterprise Graph, which can be understood as a contextual representation of all kinds of entities, including global entities (which have the same meaning for all customers, such as software names and common abbreviations) and customer-specific entities (portals, process names, office locations, and other company-specific terms). During implementation of a new customer, Moveworks mines tickets to detect such terms and adds them to our Enterprise Graph via a manual review, to assist the bot's understanding of these terms. While the majority of entity candidates are detected and added in this phase, we work closely with customers to continuously identify and add other candidates, improving the bot's responses over time.

(https://help.moveworks.com/docs/moveworks-search-101).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search)).

19.    Moveworks, through its use of Moveworks' Enterprise Search product, performs the steps of receiving a global search request through the first application, wherein the global search request requests information across the first application and the second application; in response to the reception of the global search request, prompting for a search term from a user. For example, once the Moveworks Enterprise Search bar is opened, Enterprise Search will prompt for a search term that will be applied to search across Moveworks (first application) as well as integrated applications (second application) such as Slack, Salesforce, and Google Calendar, as shown in the video.



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) (Moveworks Enterprise Search Video at 0:49). Enterprise search shows a preview of information in the first application (Google Drive and PDF files) and a second application (Slack).



(https://www.moveworks.com/us/en/platform/enterprise-search).  This video shows that the first application includes files such as Google Drive and PDF files. Alternatively, articles and pages comprise information from within Moveworks as "first information."   As further detail, Moveworks discloses how a global search request can search across the first application. Specifically, Moveworks Enterprise Search has a "Content Ingestion Platform" that allows "articles, pages, and files to power our AI Assistant and Enterprise Search experiences."



(https://help.moveworks.com/docs/content-ingestion-platform).   Additional  screenshots  below

show how the first information is processed so it can be searched:



([https://help.moveworks.com/docs/content-ingestion-platform](https://help.moveworks.com/docs/content-ingestion-platform)).

20.     Moveworks, through its use of Moveworks' Enterprise Search product, performs the steps of receiving the search term; based on the received search term, automatically determining one or more corresponding candidate elements associated with the second application and presenting the determined one or more corresponding candidate elements associated with the second application for selection by the user.  For example, once the search term is entered, relevant results from the integrated applications will be presented in a small selectable preview (candidate element).  As shown below, each of the first/second applications corresponds to a candidate element that can be selected by a user.



(https://www.moveworks.com/us/en/platform/enterprise-search at Moveworks Enterprise Search Video at 0:50). The video shows a selectable set of information (candidate elements) from within both first/second applications.

# Choosing the best answer: Scoring, ranking, and analyzing

Moveworks analyzes every query and extracts key information such as the language, part of speech, domain, intent and entities. Given your bot has a variety of ways to assist the user with their query, we use this information to identify which Skills are best placed to respond to the user. E.g. is this a request for an automated operation such as resetting a password or provisioning software, which can be handled by the bot with an action, or is this an information-seeking query about an issue or a process, which requires search to provide the relevant knowledge?

Once the relevant Skills are identified, each of them is provided the user's query and relevant meta data. Every Skill returns a "bid" which represents its confidence in being able to address the user's query. An "auctioneer" model reviews all the bids and selects the bid that it determines has the highest likelihood of resolving the user's query. This prediction is based on the Skill's own confidence, but also considers whether the response will be able to resolve the issue automatically or not. As an example, a query about resetting your MFA will surface the Reset MFA Skill, which supports automating the MFA reset process, above a relevant FAQ on the same, because the former will automatically resolve the issue while the latter will give the user self-service instructions to resolve the issue.

This matching of query to Skill or resolution type is handled automatically by Moveworks once the customer specifies which types of automations they want to enable. There is no need to do any utterance mapping to different resolutions.

(https://help.moveworks.com/docs/moveworks-search-101).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search)).

21.     Moveworks, through its use of Moveworks' Enterprise Search product, performs the steps of receiving the selection of at least one of the candidate elements; and linking information between the first application and the second application.  For example, a user may either directly select one of the candidate elements associated with the integrated applications or may alternatively filter them in the right-hand tool bar.  Each of those candidate elements provides a link back to the second applications, which in this example are shown as Sharepoint, Google Drive, and Slack.



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 00:52).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 0:16).

22.    Moveworks, through its use of Moveworks' Enterprise Search product, performs the step of, responsive to receiving the selection of the candidate element, linking the selected candidate element with the first application such that a user may access the selected candidate element from the first application.   For example, when a user selects one of these candidate

elements by clicking on it, the user will be able to access that second application directly, as you see in the example below with Slack being the second application:



(https://www.moveworks.com/us/en/platform/enterprise-search).

23.    Moveworks, through its use of Moveworks' Enterprise Search product, performs the step of generating for the first application a selectable link that, when selected, is operable to enable access to information related to the second application.  For example, each candidate element returned has a selectable link to the second application, that can be used to enable access to information related to the selected application.



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 00:42).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 00:42).  As a further alternative read, a dedicated notifications panel is provided that tracks to-do items across first and second applications in a separate panel.



(https://www.moveworks.com/us/en/platform/enterprise-search).

24.     Moveworks, through its use of Moveworks' Enterprise Search product, performs the steps of receiving the selection of the linked selected candidate element through the first application; and responsive to the reception of the selection of the linked selected candidate element, presenting information related to the linked selected candidate element through the first application. For example, when a user selects the linked candidate element through Moveworks Enterprise Search, either in the Moveworks Enterprise Search window or the Search chat, the user may click on the link to that candidate element to reveal more information related to the linked selected element through Enterprise Search. Below is an example of that through Search being used with Moveworks' integration with Notion (second application).

Experience



**Paul**  7:22 AM
kandji update



**Moveworks**  7:22 AM
I may not have the exact answer, but I've found the following results which may be helpful.

📚 ***Related answers ordered by relevance***

**Device Management Policy:**

Application and OS updates for devices will be deployed through Kandji. The enforcement period will depend on the nature of each update and can be viewed in the table below. Additionally, applications that are not specified in this document may be installed and upd...

See more

**Kandji Migration Guide:**

Detailing the process of migration of our employees: Our organization is migrating our Mobile Device Management (MDM) software to Kandji. This will allow our IT and Security team to provide seamless managed device experience for our employees. This includes aut...

See more

**Does this resolve your issue?**

(https://help.moveworks.com/docs/answers-integration-notion).   In the example above, a user is presented with a selectable link and then further optionally provides additional context post-search:



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 1:03).



([https://www.moveworks.com/us/en/platform/enterprise-search](https://www.moveworks.com/us/en/platform/enterprise-search) at 1:06).

25.     Defendant's customers also infringe claim 1 of the '079 Patent by using or performing the claimed method using the Accused Instrumentalities as described

above. Furthermore, Defendant advertises, markets, and offers for sale the Accused Instrumentalities to its customers for use in a system in a manner that, as described above, infringes claim 1 of the '079 Patent. Exemplary advertising and marketing material is cited above.

26. **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '079 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed at least one claim of the '079 Patent. For example, Defendant provides marketing material and videos advertising that the Accused Instrumentality performs the claimed method of enabling the sharing of information between a first application and a second application on a computing device as claimed in claim 1 of the '079 Patent. (*Supra* ¶¶15-24 (identifying marketing materials and videos)).

27. On information and belief, since becoming aware of the '079 Patent and of the infringement through advertising and offering for sale the Accused Instrumentality for use by its customers, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through specification sheets, support, and user's guides.

26

Exemplary materials are cited above. (*Supra* ¶¶15-24 (identifying marketing materials and videos)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '079 Patent by its customers.

28.    On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '079 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶15-24 (identifying marketing materials and videos)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '079 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least one claim of the '079 Patent, Defendant knew that each such new use was made and adapted for infringement of at least one claim of the '079 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶15-24 (identifying marketing materials and videos)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the

manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use.  (*Id.*).

29.    Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '079 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

30.    Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '079 Patent, Plaintiff will be greatly and irreparably harmed.

31.    The asserted claim of the '079 Patent is a method claim to which the marking requirements are not applicable.  Plaintiff has therefore complied with the marking statute 35 U.S.C. §287.

## IV.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of United States Patent No. 9,916,079 have been infringed, directly and indirectly, and either literally and/or under the doctrine of equivalents, by Defendant;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

c.      That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d.      That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.      That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

August 22, 2025                                      DIRECTION IP LAW

                                                    _/s/ David R. Bennett_
                                                    David R. Bennett (Illinois Bar No. 6244214)
                                                    Direction IP Law
                                                    P.O. Box 14184
                                                    Chicago, IL 60614-0184
                                                    (312) 291-1667
                                                    dbennett@directionip.com

                                                    *Attorneys for Plaintiff*
                                                    *VE Opening LLC*